UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| ALAN BARROWMAN, et al., | CASE NO. C15-0717JLR |
|---|---|
| Plaintiffs, | ORDER DENYING MOTIONS |
| v. | |
| WRIGHT MEDICAL TECHNOLOGY INC., et al., | |
| Defendants. | |

## I. INTRODUCTION

Before the court are Plaintiffs Alan Barrowman and Jessica Robertson's (collectively, "Plaintiffs") motion for relief from the court's scheduling order and for leave to amend the complaint (MTA (Dkt. # 34)) and a motion to remand should the court grant leave to amend (MTR (Dkt. # 36)). The court has considered the parties' submissions in support of and in opposition to the motions, the relevant portions of the

//

//

record, and the applicable law. Being fully advised,[1] the court denies Plaintiffs' motion for relief from the court's scheduling order and for leave to amend and denies as moot Plaintiffs' motion to remand.

## II.   BACKGROUND

On January 23, 2012, Dr. Solomon Wu performed multiple outpatient surgical procedures on Ms. Robertson's right foot, and on February 13, 2012, he performed the same procedures on Mr. Barrowman's right foot.[2] (Compl. (Dkt. # 1-1) ¶¶ 3.2, 3.4.) As part of the operation, Dr. Wu implanted in each patient's right foot a Cancello-Pure 10x50 millimeter Wedge ("Wedge"), manufactured by Defendant RTI Surgical, Inc. ("RTI") and distributed by Defendant Wright Medical Technology, Inc. ("Wright"). (*Id.* ¶¶ 3.3, 3.5; 1st Bigby Decl. (Dkt. # 35) ¶ 1.) After the surgeries, Plaintiffs continued to experience pain. (Compl. ¶¶ 3.6, 3.8.) A different surgeon, Dr. Rodney Graves, later removed the Wedge from Ms. Robertson's foot on March 1, 2013, and from Mr. Barrowman's foot on February 24, 2014. (*Id.* ¶¶ 3.7, 3.9.)

On January 23, 2015, Plaintiffs filed suit against Wright and RTI (collectively, "Defendants") in King County Superior Court, asserting product liability claims. (*See generally* Compl.) Specifically, Plaintiffs allege multiple theories of product liability, including design defect, failure to warn, manufacturing defect, and breach of the implied

---

[1] Neither party requests oral argument, and the court concludes that oral argument would not be helpful to its disposition of the motions. *See* Local Rules W.D. Wash. LCR 7(b)(4).

[2] The complaint states that Mr. Barrowman's surgery was in 2013, but his surgery appears to have actually occurred in 2012. (*See* 1st Bigby Decl. (Dkt. # 35) ¶¶ 6-7, 12, Ex. 5 ("Christensen Rep.") at 8.)

warranties of fitness and merchantability.  (*Id.* ¶¶ 4.1-5.4.)  Plaintiffs also allege violations of Washington's Consumer Protection Act ("CPA"), RCW 19.86.  (*Id.* ¶¶ 6.1-6.3.)  On May 7, 2015, Defendants removed the action on the basis of diversity jurisdiction.[3]  (Not. of Rem. (Dkt. # 1)); *see also* 28 U.S.C. § 1332.

Beginning in July 2014—before Plaintiffs brought this suit—Plaintiffs' counsel investigated Dr. Wu's potential liability for medical malpractice.  (2d Bigby Decl. (Dkt. # 41) ¶¶ 2-7.)  In May 14, 2015, RTI asserted an affirmative defense in its answer, alleging that Dr. Wu caused or contributed to Plaintiffs' injuries.  (RTI Answer (Dkt. # 6) at 6.).  And on May 3, 2017, Defendants produced a report from their expert, Dr. Jeffrey C. Christensen.  (1st Bigby Decl. ¶ 6.)  In his report, Dr. Christensen concluded that Dr. Wu improperly performed the Wedge implantation procedure.  (Christensen Rep. at 11.)

Plaintiffs now seek relief from the court's scheduling order to amend their pleadings nearly two months after the applicable deadline, which was May 3, 2017. (2/10/17 Order (Dkt. # 24) at 4.)  Specifically, they request leave to amend to add a claim of medical malpractice against Dr. Wu.  (MTA at 1; Prop. Amend. Compl. (Dkt. # 34-1) ¶¶ 7.1-7.6.)  Plaintiffs contend that they could not have amended their complaint earlier because they did not know about any alleged medical malpractice on Dr. Wu's part. (MTA at 1.)  Because adding Dr. Wu—a Washington domiciliary—would deprive the court of subject matter jurisdiction by destroying complete diversity, Plaintiffs also seek a remand to state court if the court grants their motion to amend.  (MTR at 1.)

---

[3] Wright's principal place of business is Tennessee, and RTI's is Florida; both are incorporated in Delaware.  (Not. of Rem.)  Plaintiffs reside in Washington.  (Compl. ¶¶ 2.1-2.2.)

# III. ANALYSIS

## A. Evidentiary Objections

As a preliminary matter, Defendants object to three statements Plaintiffs' counsel, Aaron Bigby, makes in his first declaration.[4] (MTA Resp. (Dkt. #37) at 12.) The three statements are:

- "Jessica Robertson underwent an Evans procedure, a surgery used to correct foot and ankle deformities, with Dr. Wu on January 23, 2012. Plaintiff Alan Barrowman underwent an Evans procedure with Dr. Wu on February 13, 2012. Each Plaintiff's procedure involved implanting a Cancello-Pure 10x50 mm Wedge. The Cancello-Pure Wedge is a bone graft composed of cow bone, also known as a xenograft, and shaped into a wedge form. Defendant RTI Surgical, Inc. (hereinafter 'RTI') manufactured the Wedge and Defendant Wright Technology, Inc. (hereinafter 'Wright') distributed the Wedge. Both Plaintiffs received follow-up treatment from Dr. Wu." (1st Bigby Decl. ¶ 1.)

- "In addition to both Plaintiffs, Dr. Wu had two other patients who received a Cancello-Pure 10x50 Wedge implant that subsequently failed to form a union." (*Id.* ¶ 2.)

- "Dr. Wu discussed the non-union event with [Mr.] Barrowman and informed him that Wright was 'investigating whether there [was] a change in their processing regarding the batch of bone xenograft use [sic] which may contribute to this delayed union/nonunion.'" (*Id.* (second and third alterations in original).)

Defendants object to Mr. Bigby's first and second statements as not based on personal knowledge and as unqualified medical testimony, and they object to

---

[4] Plaintiffs respond to these objections in Mr. Bigby's second declaration rather than in their reply brief. (*See* 2d Bigby Decl. ¶ 1 (referencing Defendants' objections and "addressing each [objection] as follows").) Accordingly, the court considers Mr. Bigby's second declaration in analyzing Defendants' objections.

the third statement as inadmissible hearsay. (MTA Resp. at 12.) For the following reasons, the court overrules Defendants' objections to the first and third statements and sustains Defendants' objection to the second statement. The objection to the second statement does not, however, affect the court's analysis of Plaintiffs' motions. *See infra* §§ III.B.2, III.C.2.

1. Personal Knowledge and Lay Witness Testimony

Federal Rule of Evidence 602 allows a witness to testify to a matter only if "evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter." Fed. R. Evid. 602. Personal knowledge may be inferred from the declaration itself based on the declarant's role and participation in the matters declared. *See Barthelemy v. Air Lines Pilots Ass'n*, 897 F.2d 999, 1018 (9th Cir. 1990). Accordingly, personal knowledge "is not strictly limited to activities in which the declarant has personally participated [because] personal knowledge can come from review of the contents of files and records." *Wash. Cent. R.R. Co., Inc. v. Nat'l Mediation Bd.*, 830 F. Supp. 1343, 1353 (E.D. Wash. 1993) (citations omitted) (finding personal knowledge sufficient when the declarant was the official records custodian). From reviewing records, "a declarant may testify to acts that she or he did not personally observe but which are described in the record." *Id.* A declarant need not support every factual statement with independent documentation, but a court need not give "much weight" to unsupported factual statements. *State Farm Mut. Auto. Ins. Co. v. Frounfelter*, No. C16-5242BHS, 2017 WL 1048291, at *3 (W.D. Wash. Mar. 20, 2017) (citing *Wash. Cent. R.R. Co.*, 830 F. Supp. at 1355).

Mr. Bigby's role and participation in the litigation gives him knowledge of some facts from reviewing records. *See Barthelemy*, 897 F.2d at 1018. Yet, Plaintiffs must also introduce evidence "sufficient to support a finding that the witness has personal knowledge of the matter." Fed. R. Evid. 602. Regarding Mr. Bigby's first statement, there is sufficient evidence showing his personal knowledge of Plaintiffs' medical care based on his role in reviewing documents for this case. (*See* 1st Bigby Decl. ¶¶ 10-13, Exs. 2, 3, 4, 5; *see also* Dorrity Decl. (Dkt. # 38) ¶ 3, Ex. A ("Graves Dep.") at 101:21-102:1.)

However, Mr. Bigby's role in the litigation does not provide similar support for the second statement. Other than Mr. Bigby's attestation, no document before the court reflects the facts he recites in his second statement. Unlike the declarant in *Washington Central Railroad*, Mr. Bigby is not the custodian of the records he claims to have reviewed, 830 F. Supp. at 1352-53, and he must do more than assert a fact as true to show that he possesses personal knowledge of that fact, s*ee* Fed. R. Evid. 602; *but see State Farm*, 2017 WL 1048291, at *3 (denying motion to strike statements from a declaration made by a records custodian despite declarant's failure to attach supporting records).

Defendants also object to the first and second statements as "unqualified medical testimony." (MTA Resp. at 12.) Federal Rule of Evidence 701 limits lay testimony to information "(a) rationally based on the perception of the witness, (b) helpful to a clear understanding of the witness' testimony, and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702." Fed. R. Evid. 701. Testimony that is admissible under Rule 701 "most often takes the form of first-hand

sensory observations," whereas expert testimony "brings an appraisal to those facts [of the case] a scientific, technological, or other specialized knowledge that the lay person cannot be expected to possess." *United States v. Conn*, 297 F.3d 548, 554 (7th Cir. 2002) (citations omitted); *accord United States v. Figueroa-Lopez*, 125 F.3d 1241, 1246 (9th Cir. 1997) (expert testimony includes the "perceptions, education, training, and experience of the witness").

The first statement constitutes permissible lay testimony under Rule 701. As discussed, Mr. Bigby has personal knowledge of the facts relayed in the first statement through his review of case documents. The first statement also includes explanatory descriptions of Plaintiffs' surgical procedures and Wedge implants, which are helpful for understanding the basic facts of this case and their connection to Plaintiffs' motion to amend. In addition, the first statement provides information that Mr. Bigby learned through personal observation rather than experience and training. *See Figueroa-Lopez*, 125 F.3d at 1246. For these reasons, the court overrules Defendants' objection to the first statement as "unqualified medical testimony."[5]

2. Hearsay

Defendants move to strike the third statement as hearsay. (MTA Resp. at 12.) Hearsay is an out-of-court statement offered in evidence to prove the truth of the matter asserted. *See* Fed. R. Evid. 801(c). Hearsay is inadmissible, Fed. R. Evid. 802, but

---

[5] The court declines to address this issue as to the second statement because the court has already sustained Defendants' objection to the second statement and determined that it is not based on sufficient personal knowledge.

Federal Rule of Evidence 803(4) excepts from hearsay "statements made for purposes of medical diagnosis or treatment and describing medical history . . . or the inception or general character of the cause or external source [of symptoms] thereof insofar as reasonably pertinent to diagnosis or treatment," Fed. R. Evid. 803(4).

The court overrules Defendants' objection to the third statement because the statement is not hearsay, and, in any event, it fits within the medical exception to hearsay. The statement is not hearsay because Plaintiffs do not offer Dr. Wu's statement through Mr. Bigby for the purpose of proving that Wright investigated the efficacy of the Wedge. Rather, Plaintiffs use this quotation to explain why neither Plaintiffs nor their counsel suspected medical negligence prior to receiving Dr. Christensen's expert report on May 3, 2017.[6] (*See generally* 1st Bigby Decl.) In the alternative, the statement fits within the medical exception to the hearsay rule because it is part of Mr. Barrowman's medical records, and Dr. Wu included the statement in his notes of Mr. Barrowman's visit for the purpose of explaining or treating his patient's ongoing foot troubles. (*See* 1st Bigby Decl. ¶ 12, Ex. 4 at 2.) Thus, the quote fits within the medical exception defined in Rule 803(4).

//

//

//

---

[6] Defendants also object to the third statement as hearsay-within-hearsay, but this is an inaccurate characterization. Defendants assume that this quotation came from Mr. Barrowman and relayed Dr. Wu's words (MTA Resp. at 12) when the words were Dr. Wu's and came from Dr. Wu's notes of his visit with Mr. Barrowman (s*ee* 1st Bigby Decl. ¶ 12, Ex. 4 at 3).

**B. Relief from the Court's Scheduling Order Deadline**

1. Legal Standard

Federal Rule of Civil Procedure 15(a) sets the standard for amending pleadings until a court enters a pretrial scheduling order under Federal Rule of Civil Procedure 16. *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 607-08 (9th Cir. 1992). Once entered, parties seeking relief from the scheduling order must show "good cause." *Id.* at 608. The court analyzes the proposed amendment under Rule 15's more liberal standard only if a party seeking relief shows good cause for failing to amend a pleading prior to the scheduled deadline. *Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1294 (9th Cir. 2000) (quoting *Johnson*, 975 F.2d at 608-09).

Rule 16(b)'s good cause standard "primarily considers the diligence of the party seeking the amendment." *Id.* (quoting *Johnson*, 975 F.2d at 609). A party seeking to amend must show why the party could not have sought such amendment earlier. *Id.* "A party meets Rule 16's good cause standard if it shows that, despite its diligence, it was unable to uncover the information underlying its motion to amend." *Deep9 Corp. v. Barnes & Noble, Inc.*, No. C11-0035JLR, 2012 WL 4336726, at *15 (W.D. Wash. Sept. 21, 2012) (citing *Johnson*, 975 F.2d at 609). Without a showing of diligence, "the inquiry should end." *Coleman*, 232 F.3d at 1295 (quoting *Johnson*, 975 F.2d at 609).

2. Whether Good Cause Exists to Grant Relief

Plaintiffs argue that they had no reason to suspect earlier that Dr. Wu committed malpractice in treating them, thereby making it "impossible" to join Dr. Wu and add a malpractice claim prior to receiving Dr. Christensen's expert report on May 3, 2017.

(MTA at 5-6.) Specifically, they contend that "[i]t was not until Plaintiff[s'] counsel reviewed Dr. Christensen's report that Plaintiffs began to suspect Dr. Wu may have caused or contributed to their respective injuries." (*Id.* at 11.) Plaintiffs assert that RTI[7] only "loosely implicated" Dr. Wu in its May 14, 2015, answer to the complaint (*id.* at 3), which they contend demonstrates there was "no basis" to allocate fault to Dr. Wu prior to disclosure of the expert report (*id.* at 5). Plaintiffs' counsel further notes that none of the experts he consulted in either 2014 or 2017 identified any negligence by Dr. Wu after reviewing Plaintiffs' medical records. (2d Bigby Decl. ¶¶ 2-8; 1st Bigby Decl. ¶ 5.)

Defendants counter that Plaintiffs failed to conduct a thorough investigation of Dr. Wu's potential liability until May 2017, and they uncovered no new facts through Dr. Christensen's report sufficient to provide good cause. (MTA Resp. at 7-8, 10.) First, Plaintiffs did not submit interrogatories to Defendants until January 4, 2017. (MTA Resp. at 8; Dorrity Decl. ¶ 10.) Also, Plaintiffs retained expert Dr. Aprajita Nakra on February 27, 2017, only a few months before the deadlines for expert disclosures and filing amended pleadings.[8] (MTA Resp. at 9; Dorrity Decl. ¶ 4, Ex. B ("Nakra Invoice").) Finally, Dr. Christensen based his report almost entirely on Plaintiffs' own medical records, which Defendants contend have always been accessible to Plaintiffs. (MTA Resp. at 8; Christensen Rep. at 1,7.)

---

[7] Plaintiffs states that Wright identified Dr. Wu in its answer, but RTI's answer did so—not Wright's. (*Compare* RTI Answer at 6, *with* Wright Answer (Dkt. # 4) at 6.)

[8] Plaintiffs submitted an expert report from Dr. Nakra but not from either of the experts Plaintiffs' counsel consulted in 2014. (*See generally* Dkt. ## 34-42.)

The court concludes that Plaintiffs have not demonstrated good cause to amend their complaint. Contrary to their assertions, Plaintiffs could have uncovered through diligent investigation the same legal theory—that Dr. Wu breached the applicable standard of care—that Dr. Christensen discusses in his report. (2d Bigby Decl. ¶ 9 (stating that "[p]rior to receiving Dr. Christensen's expert report, our firm had found no evidence suggesting Dr. Wu violated any applicable standard of care.").) Dr. Christensen based his report on a review of Plaintiffs' own medical records, which date from 2014 or earlier (Christensen Rep. at 1,7), and Plaintiffs have not shown those records were inaccessible to them before Dr. Christensen created his report (*see generally* MTA; MTA Reply). Moreover, Mr. Bigby conducted his own investigation into the possibility of negligence by Dr. Wu as early as July 2014. (2d Bigby Decl. ¶¶ 2-7.) This investigation included conversations with multiple physicians regarding Plaintiffs' injuries and Dr. Wu's standard of care.[9] (*Id.*) Whatever the facts were in 2014, Plaintiffs' counsel had ample time to investigate and identify possible malpractice.

Moreover, Plaintiffs make no showing that they have uncovered new facts—other than disclosure of Dr. Christensen's report, which is insufficient to demonstrate good cause. Indeed, the law is clear that absence of a legal theory is different from an absence of information. *See Allen v. City of Beverly Hills*, 911 F.2d 367, 374 (9th Cir. 1990)

---

[9] Mr. Bigby does not explain what those experts told him in 2014 nor does he indicate whether he provided them with his clients' medical records. (*See* 2d Bigby Decl. ¶¶ 5-7, 10-11, Exs. 1, 2.) If he had provided them with the records and discussed medical malpractice, it is unclear why Plaintiffs needed to wait two and a half years to plead medical malpractice. If he did not provide the records but eliminated medical malpractice as a theory, then waiting to investigate a possible medical malpractice claim until 2017 shows Plaintiffs were not diligent.

(denying a motion to amend "when the movant present[s] no new facts but only new theories and provided no satisfactory explanation for his failure to fully develop his contentions originally") (citation and internal quotes omitted). Although Plaintiffs and their counsel may not have identified malpractice as a theory prior to reviewing Dr. Christensen's expert report, that failure does not amount to lacking the necessary facts to develop the theory. Because Plaintiffs have not demonstrated the requisite good cause, the court denies Plaintiffs' motion for relief from the scheduling order.

**C. Motion to Amend**

Although the court need not address Plaintiffs' arguments under Rule 15, the court nevertheless concludes that amending the complaint to add a claim for medical malpractice against Dr. Wu would be futile. Here, based on the facts of this case, the good cause analysis under Rule 16 overlaps significantly with the inquiry into whether amendment would be futile under Rule 15. *See supra* § III.B.2; *infra* § III.C.2.

1. Legal Standard

A "court should freely give leave [to amend a pleading] when justice so requires." Fed. R. Civ. P. 15(a)(2). Accordingly, the court should consider a motion to amend "with all inferences in favor of granting the motion." *Griggs v. Pace Am. Grp., Inc.*, 170 F.3d 877, 880 (9th Cir. 1999). In doing so, courts typically consider five factors: (1) futility of amendment, (2) undue delay, (3) prejudice to the opposing party, (4) bad faith, and (5) whether the party previously amended its complaint. *Wizards of the Coast LLC v. Cryptozoic Entm't LLC*, 309 F.R.D. 645, 651 (W.D. Wash. 2015) (citing *Allen*, 911 F.2d at 373). A court does not weigh all factors equally, however, because futility alone

justifies denying leave to amend. *Novak v. United States*, 795 F.3d 1012, 1020 (9th Cir. 2015) (citing *Bonin v. Calderon*, 59 F.3d 815, 845 (9th Cir. 1995)). A proposed amendment is futile "if no set of facts can be proved under the amendment to the pleadings that would constitute a valid and sufficient claim or defense." *Ralls v. Facebook*, 221 F. Supp. 3d 1237, 1245 (W.D. Wash. 2016) (quoting *Miller v. Rykoff-Sexton, Inc.*, 845 F.2d 209, 214 (9th Cir. 1988)).

    2. <u>Whether Granting Leave to Amend Is Warranted</u>

Plaintiffs seek to amend their complaint to add a medical malpractice claim against Dr. Wu. (MTA at 1.) Despite Plaintiffs' concession that the claim is barred by the applicable three-year statute of limitations, they argue the claim is nevertheless timely because Plaintiffs did not discover the claim until May 2017. (MTA at 9-10); RCW 4.16.350(3) (stating Washington's medical malpractice discovery rule).[10] According to Plaintiffs, their counsel conducted a diligent investigation in 2014 and found no evidence of negligence, so the one-year accrual period for them to discover the alleged malpractice actually began on May 3, 2017, when they received Dr. Christensen's report. (MTA at 11-12). Specifically, Plaintiffs contend that they "had no reason to believe . . . anything other than a defective product" caused their injuries "until after Defendants' expert disclosures," and they only "began to suspect" negligence by Dr. Wu after reading Dr. Christensen's report. (MTA at 11.) Defendants argue that the proposed amendment

//

---

[10] "[A] federal court sitting in diversity is bound to apply the statute of limitations of the forum jurisdiction." *Nw. Airlines, Inc. v. Camacho*, 296 F.3d 787, 789 n.1 (9th Cir. 2002).

would be futile because the statute of limitations has run and the discovery rule is inapplicable. (MTA Resp. at 4.)

        i.     Futility

Under Washington law, a party must bring a malpractice claim within three years of injury "or one year of the time the patient or his or her representative discovered or reasonably should have discovered that the injury or condition was caused by said act or omission, whichever period expires later." RCW 4.16.350(3). This one-year exception is known as the discovery rule. *In re Estates of Hibbard*, 826 P.2d 690, 694 (Wash. 1992). Plaintiffs concede that their claim is untimely under the three-year statute of limitations. (MTA at 10.) Thus, the issue is whether Plaintiffs claim began accruing on May 3, 2017.

The discovery rule is generally limited to "claims in which the plaintiffs could not have immediately known of their injuries due to professional malpractice, occupational diseases, self-reporting[,] or concealment of information by the defendant." *Hibbard*, 826 P.2d at 696. If the rule applies, a plaintiff must demonstrate diligence in discovering the factual basis of the cause of action to benefit from the discovery rule. *See Adcox v. Children's Orthopedic Hosp. & Med. Ctr.*, 864 P.2d 921, 933 (Wash. 1993) (quoting *Allen v. State*, 826 P.2d 200, 203 (Wash. 1992)). More precisely, the one-year clock begins to run when the plaintiff "knows or should know the relevant facts, whether or not the plaintiff also knows that these facts are enough to establish a legal cause of action."[11]

---

[11] Both parties state that the discovery rule requires that "a plaintiff must investigate and identify all possible defendants within one year of when the plaintiff first suspects that his or her injuries were caused by medical malpractice." (MTA at 10; MTA Resp. at 6). However, the Washington Supreme Court explicitly rejected this formulation of the discovery rule. *See*

*Allen*, 826 P.2d at 203. A plaintiff may not have a duty to pursue a potential malpractice claim when she can show "another facially logical explanation" for the injury and diligent pursuit of her other potential claims. *See Winbun v. Moore,* 18 P.3d 576, 582 (Wash. 2001) (quoting *Lo v. Honda Motor Co., Ltd.*, 869 P.2d 1114, 1118 (Wash. Ct. App. 1994)). As a matter of policy, a plaintiff should have "a reasonable opportunity to discover" that medical negligence caused an injury. *See Lo*, 869 P.2d at 1120. When the plaintiff reasonably should have discovered their injury is normally a question of fact. [12] *Adcox*, 864 P.2d at 933.

Plaintiffs rely on two cases to argue that the discovery rule should apply. (MTA at 10.) Both *Lo v. Honda Motor Co., Ltd.* and *Winbun v. Moore* involved plaintiffs who, despite their diligence, lacked critical facts enabling the discovery of malpractice before the three-year statute of limitations ran. *See Lo*, 869 P.2d at 1120-22; *Winbun*, 18 P.3d at 581-83. However, neither case supports Plaintiffs' position. In those cases, the plaintiffs "could not have immediately known of their injuries due to professional malpractice,

---

*Winbun v. Moore*, 18 P.3d 576, 580-81, 584 (Wash. 2001). Even if this formulation were correct, it does not appear to favor Plaintiffs because they first suspected and investigated medical malpractice in July 2014. (2d Bigby Decl. ¶¶ 2-7.) Thus, the statute of limitations still would have run sometime in 2015 because Plaintiffs have not demonstrated that they discovered any new facts or theories since then.

[12] Based on this rule, Plaintiffs endeavor to treat this issue like a motion for summary judgment. (*See, e.g.*, MTA at 12 ("Plaintiffs have, at a minimum, created a question for the trier of fact.").) However, claims of futility should be treated under the standards of a motion to dismiss. *Miller*, 845 F.2d at 214 (stating that the proper test of an amendment's sufficiency "is identical" to a pleading challenged under Rule 12(b)(6)) (citation omitted). Thus, amendment is futile and properly denied if the running of the limitations period is apparent. *Cf. Jones v. Block*, 549 U.S. 199, 215 (2007) ("If the allegations . . . show that relief is barred by the applicable statute of limitations, the complaint is subject to dismissal for failure to state a claim.")

occupational disease, self-reporting[,] or concealment of information by the defendant." *Hibbard*, 826 P.2d at 696. Ms. Lo's car accident and her resultant injuries provided a facially logical explanation for her prematurely born son's birth defects, particularly when coupled with her doctors' assessments that birth defects may have "no explanation" and "in a small percentage of cases these things just happen." *Lo*, 869 P.2d at 1115, 1121-22. Similarly, Ms. Winbun's hospital failed to provide her complete medical record until after she sued, thus depriving her of information about a possible malpractice defendant. *Winbun*, 18 P.3d at 581. In both cases, the plaintiffs lacked critical facts due to the defendants' actions, and the plaintiffs only discovered those facts after conducting diligent investigations they could not have commenced earlier.

Here, Plaintiffs "knew or should have known the relevant facts whether or not the plaintiff also [knew] that these facts are enough to establish a legal cause of action." *Allen*, 826 P.2d at 203. As early as July 2014, Plaintiffs' counsel "took steps to investigate whether Plaintiff[s'] physician Dr. Solomon Wu may have caused or contributed to Plaintiffs' respective injuries." (2d Bigby Decl. ¶¶ 2-3.) There is no indication that Dr. Christensen's report includes any facts previously unknown or unavailable to Plaintiffs. (MTA Resp. at 8; Christensen Rep. at 1, 7.) Even if new legal theories were sufficient to trigger the discovery rule, the rule remains inapplicable to Plaintiffs' circumstances because in May of 2015, Defendants specifically alleged that Dr. Wu was responsible for Plaintiffs' injuries. (RTI Answer at 6.) Accordingly, Plaintiffs and their attorneys had "a reasonable opportunity to discover" whether Dr. Wu's negligence caused their injuries before they received Dr. Christensen's report on

May 3, 2017. *Lo*, 869 P.2d at 1120. As discussed above, however, they do not demonstrate that Dr. Christensen's report contained new facts sufficient to trigger the discovery rule.

Although Defendants' allegedly defective medical device may provide a facially logical explanation for Plaintiffs' injuries (MTA at 11), this variation of the discovery rule is also inapplicable. Unlike the plaintiff in *Lo* who for several years investigated product liability as the only source of her son's injuries, 869 P.3d at 1116, Plaintiffs here claim to have diligently explored—and dismissed—medical negligence as a potential cause of action in 2014 (MTA at 5; 2d Bigby Decl. ¶¶ 2-7). Thus, Plaintiffs have not shown a facially logical explanation for their delay.

The court concludes that Plaintiffs' claims against Dr. Wu are time-barred. *See Ralls*, 221 F. Supp. 3d at 1245. Thus, even if Plaintiffs had shown good cause for their failure to earlier amend the complaint, Plaintiffs' motion to amend is futile.[13]

//

---

[13] The court does not consider the remaining factors because futility alone is reason to deny leave to amend. *Novak*, 795 F.3d at 1020. Nonetheless, although neither party raised the issue, the court notes that joining a new party "pose[s] an especially acute threat of prejudice," so a court's "major objective" should be avoiding prejudice to the proposed party. *DCD Programs, Ltd. v. Leighton*, 833 F.2d 183, 187 (9th Cir. 1987) (citation omitted). Generally, a court should consider the circumstances and procedural posture of the case to determine whether the proposed party had adequate notice of the litigation and adequate time to prepare to litigate. *Becherer v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 43 F.3d 1054, 1069 (6th Cir. 1995) ("[O]ur focus should be on the degree to which [the third party] took an active role in the litigation and whether its attorneys were simply observers or . . . invested substantial amounts of time in preparing") (citing *DCD Programs*, 833 F.2d at 187). Here, Plaintiffs' motion may be prejudicial to Dr. Wu, given his history and role in the case as a possible expert witness for the Plaintiffs (1st Bigby Decl. ¶ 12, Ex. 4 at 1 (signed agreement with Plaintiffs for Dr. Wu to evaluate records and give testimony)) and the case schedule. Dr. Wu would have only seven months to hire experts and nine months to conduct discovery compared to the years Plaintiffs have had to do the same.

**D. Motion to Remand**

In conjunction with the motion for relief from the scheduling order and for leave to amend, Plaintiffs also move to remand to Washington State court. The sole basis for remand is that adding Dr. Wu as a defendant will destroy complete diversity because Plaintiffs and Dr. Wu are all domiciliaries of Washington. (*See generally* MTR; 1st Bigby Decl. ¶ 12, Ex. 4 at 2; Compl. ¶¶ 2.1-2.2.) Because the court denies Plaintiffs' motion for relief from the scheduling order and to amend, *supra* § III.B.2, the court denies the motion to remand as moot.

## IV. CONCLUSION

For the foregoing reasons, the court DENIES Plaintiffs' motion for relief from the scheduling order and for leave to amend (Dkt. # 34) and DENIES as moot Plaintiffs' motion to remand (Dkt. # 36).

Dated this 19th day of September, 2017.

JAMES L. ROBART
United States District Judge