UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| ALAN BARROWMAN, et al.,<br><br>                     Plaintiffs,<br>     v.<br><br>WRIGHT MEDICAL<br>TECHNOLOGY INC., et al.,<br><br>                     Defendants. | CASE NO. C15-0717JLR<br><br>ORDER DENYING MOTION<br>FOR RECONSIDERATION |

## I. INTRODUCTION

Before the court is Plaintiffs Alan Barrowman and Jessica Robertson's (collectively, "Plaintiffs") motion for reconsideration of the court's September 19, 2017, order. (Mot. (Dkt. # 44).) The court has considered the motion, the relevant portions of

//
//
//

the record, and the applicable law. Being fully advised,[1] the court DENIES the motion for the reasons set forth below.

## II.   BACKGROUND

The court extensively detailed the factual background of this case in its earlier order. (*See* 9/19/17 Order (Dkt. # 82) at 2-9.) Accordingly, the court limits its discussion here to those facts relevant to the issues Plaintiffs now raise.

On January 23, 2012, Dr. Solomon Wu performed multiple outpatient surgical procedures on Ms. Robertson's right foot, and on February 13, 2012, he performed the same procedures on Mr. Barrowman's right foot.[2] (Compl. (Dkt. # 1-1) ¶¶ 3.2, 3.4.) During the operations, Dr. Wu implanted a Cancello-Pure 10x50 millimeter Wedge, manufactured by Defendant RTI Surgical, Inc. ("RTI") and distributed by Defendant Wright Medical Technology, Inc. ("Wright"). (*Id.* ¶¶ 3.3, 3.5; 1st Bigby Decl. ¶ 1.) A different surgeon, Dr. Rodney Graves, removed the Wedge from Ms. Robertson's foot on March 1, 2013, and from Mr. Barrowman's foot on February 24, 2014. (*Id.* ¶¶ 3.7, 3.9.)

On January 23, 2015, Plaintiffs filed suit against Wright and RTI (collectively, "Defendants") in King County Superior Court, asserting product liability claims and violations of Washington's Consumer Protection Act ("CPA"), RCW 19.86. (*Id.*

//

---

[1] Plaintiffs did not request oral argument, and the court finds that oral argument would not be helpful to its disposition of the motion. Local Rules W.D. Wash. LCR 7(b)(4).

[2] The complaint states that Mr. Barrowman's surgery was in 2013, but his surgery appears to have actually occurred in 2012. (*See* 1st Bigby Decl. (Dkt. # 35) ¶¶ 6-7, 12, Ex. 5 ("Christensen Rep.") at 8.)

¶¶ 6.1-6.3.) On May 7, 2015, Defendants removed the action on the basis of diversity jurisdiction.[3] (Not. of Rem. (Dkt. # 1)); *see also* 28 U.S.C. § 1332.

Beginning in 2013—before Plaintiffs brought this suit—Plaintiffs' counsel investigated Dr. Wu's potential liability for medical malpractice. (1st Bigby Decl. ¶ 3; 2d Bigby Decl. (Dkt. # 41) ¶¶ 2-7.) In May 14, 2015, RTI asserted an affirmative defense in its answer, alleging that Dr. Wu caused or contributed to Plaintiffs' injuries. (RTI Answer (Dkt. # 6) at 6.). Dr. Aprajita Nakra, Plaintiffs' expert witness, reviewed Plaintiffs' medical files and opined that "[t]here is no evidence that Dr. Solomon Wu's surgical technique in either of the plaintiff's surgeries was a contributing factor to the graft nonunion, and "[t]he treatment received by both the plaintiffs has been appropriate, medically necessary[,] and meets [the] standard of care." (1st Bigby Decl. ¶¶ 5, 11, Ex. 3 ("Nakra Rep.").) On May 3, 2017, Defendants produced a report from their expert, Dr. Jeffrey C. Christensen, in which Dr. Christensen concluded that Dr. Wu improperly performed the Wedge implantation procedure. (1st Bigby Decl. ¶ 6; Christensen Rep. at 11.)

After receiving Dr. Christensen's reports, Plaintiffs sought relief from the court's scheduling order to amend their pleadings to add a claim of medical malpractice against Dr. Wu. (MTA (Dkt. # 34) at 1; Prop. Am. Compl. (Dkt. # 34-1) ¶¶ 7.1-7.6; 4/22/16 Order (Dkt. # 20) at 1 (setting the deadline for joining additional parties as October 30, 2015); 2/10/17 Order (Dkt. # 24) at 4 (setting the deadline for amending pleadings as

---

[3] Wright's principal place of business is Tennessee, and RTI's is Florida; both are incorporated in Delaware. (Not. of Rem.) Plaintiffs reside in Washington. (Compl. ¶¶ 2.1-2.2.)

May 3, 2017).) Plaintiffs contended that they could not have amended their complaint earlier because they did not know about any alleged medical malpractice on Dr. Wu's part until receiving Dr. Christensen's report on May 3, 2017. (MTA at 1.) Because adding Dr. Wu—a Washington domiciliary—would deprive the court of subject matter jurisdiction by destroying complete diversity, Plaintiffs also sought remand to state court if the court granted their motion to amend. (MTR (Dkt. # 36) at 1.)

On September 19, 2017, the court denied Plaintiffs' motion to amend. (*See* 9/19/17 Order.) The court concluded that Plaintiffs failed to show good cause for not seeking to amend earlier and that even if they had, leave to amend would be futile. (*Id.* at 11-12, 14, 17.) The court also denied as moot Plaintiffs' motion to remand because without Dr. Wu's joinder, complete diversity remained intact. (*Id.* at 18.)

Plaintiffs seek reconsideration of the court's order. (*See* Mot.) They argue that the court erred in finding no good cause to seek leave to amend and in denying leave to amend as futile. (*Id.* at 3-5.) If the court reconsiders and permits amendment, Plaintiffs also move to remand to state court. (*Id.* at 2.) The court now addresses the motion.

### III. ANALYSIS

"Motions for reconsideration are disfavored," and the court "will ordinarily deny such motions in the absence of a showing of manifest error in the prior ruling or a showing of new facts or legal authority which could not have been brought to [the court's] attention earlier with reasonable diligence." Local Rules W.D. Wash. LCR 7(h)(1). The court finds that Plaintiffs fail to make the required showing of manifest error for the following reasons.

**A.  Good Cause**

Plaintiffs first argue that the court applied the incorrect standard to determine whether they had good cause for failing to seek amendment earlier.  (*See* Mot. at 3.)  Specifically, they contend that the court's analysis "focused on the reasons Plaintiffs did not amend sooner, rather than the reasons Plaintiffs could not meet the case scheduling deadlines."  (*Id.*)

When the deadlines for adding parties and amending pleadings have passed, as is the case here (*see* 4/22/16 Order at 1; 2/10/17 Order at 4), a plaintiff may seek amendment only by first showing "good cause" under Federal Rule of Civil Procedure 16(b)(4), *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 607-08 (9th Cir. 1992); Fed. R. Civ. P. 16(b)(4) ("A schedule may be modified only for good cause and with the judge's consent.").  "Rule 16(b)'s 'good cause' standard primarily considers the diligence of the party seeking the amendment." *Johnson*, 975 F.2d at 609.  To show "good cause," a party must show that it could not meet the deadline in the scheduling order despite the party's diligence.  *Id*.  The court's inquiry thus turns on whether Plaintiffs were "diligent in discovering the basis for and seeking" to join Dr. Wu and add the medical malpractice claim. *Rain Gutter Pros, LLC v. MGP Mfg., LLC*, No. C14-0458RSM, 2015 WL 6030678, at *2 (W.D. Wash. Oct. 15, 2015); *see also Deep9 Corp. v. Barnes & Noble, Inc.*, No. C11-0035JLR, 2012 WL 4336726, at *15 (W.D. Wash. Sept. 21, 2012) (stating that the good cause requirement focuses on whether the moving party "was unable to uncover the information underlying its motion to amend").

//

**A.  Good Cause**

Plaintiffs first argue that the court applied the incorrect standard to determine whether they had good cause for failing to seek amendment earlier.  (*See* Mot. at 3.)  Specifically, they contend that the court's analysis "focused on the reasons Plaintiffs did not amend sooner, rather than the reasons Plaintiffs could not meet the case scheduling deadlines."  (*Id.*)

When the deadlines for adding parties and amending pleadings have passed, as is the case here (*see* 4/22/16 Order at 1; 2/10/17 Order at 4), a plaintiff may seek amendment only by first showing "good cause" under Federal Rule of Civil Procedure 16(b)(4), *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 607-08 (9th Cir. 1992); Fed. R. Civ. P. 16(b)(4) ("A schedule may be modified only for good cause and with the judge's consent.").  "Rule 16(b)'s 'good cause' standard primarily considers the diligence of the party seeking the amendment." *Johnson*, 975 F.2d at 609.  To show "good cause," a party must show that it could not meet the deadline in the scheduling order despite the party's diligence.  *Id*.  The court's inquiry thus turns on whether Plaintiffs were "diligent in discovering the basis for and seeking" to join Dr. Wu and add the medical malpractice claim. *Rain Gutter Pros, LLC v. MGP Mfg., LLC*, No. C14-0458RSM, 2015 WL 6030678, at *2 (W.D. Wash. Oct. 15, 2015); *see also Deep9 Corp. v. Barnes & Noble, Inc.*, No. C11-0035JLR, 2012 WL 4336726, at *15 (W.D. Wash. Sept. 21, 2012) (stating that the good cause requirement focuses on whether the moving party "was unable to uncover the information underlying its motion to amend").

//

In its September 19, 2017, order, the court found no such good cause. The court noted that "Dr. Christensen based his report on a review of Plaintiffs' own medical records, which date from 2014 or earlier, and Plaintiffs have not shown those records were inaccessible to them before Dr. Christensen created his report." (*Id.* at 11 (citing Christensen Rep. at 1, 7).) The court determined that the only new fact precipitating Plaintiffs' motion was Dr. Christensen's report itself—not any facts upon which the report was based. (*Id.*) In addition, Plaintiffs knew RTI intended to pursue the theory that Dr. Wu was at fault for Plaintiffs' injuries. (*See* RTI Answer at 6; 1st Bigby Decl. ¶ 4 (stating that during discovery "Wright answered that Dr. Wu may be an at-fault non-party").) Against this backdrop, Plaintiffs' claim that it would have been "impossible" to join Dr. Wu and add a malpractice claim prior to Dr. Christensen's expert report rings hollow. Thus, Plaintiffs had not been diligent in meeting the court's scheduling order because they already had the necessary facts underlying their proposed joinder and amendment. *See Rain Gutter Pros*, 2015 WL 6030678, at *2; *Deep9*, 2012 WL 4336726, at *15.

The court therefore declines to disturb its prior ruling. The court focused on Plaintiffs' diligence in seeking amendment and in so doing, applied the proper standard. However, the court provided an alternative basis for its denial of leave to amend—even if Plaintiffs had demonstrated good cause, amendment was futile. (*Id.* at 12 ("Although the court need not address Plaintiffs' arguments under Rule 15, the court nevertheless concludes that amending the complaint to add a claim for medical malpractice against Dr.

//

Wu would be futile.").) Thus, even if the court applied an improper standard, the court's good cause analysis was not dispositive of Plaintiffs' motion.

**B.  Leave to Amend**

A proposed amendment is futile "if no set of facts can be proved under the amendment to the pleadings that would constitute a valid and sufficient claim or defense." *Miller v. Rykoff–Sexton, Inc.*, 845 F.2d 209, 214 (9th Cir. 1988); *see also Gamez v. Ryan*, No. CIV 12-00760 PHX RCB MEA, 2012 WL 8015674, at *2 (D. Ariz. Nov. 21, 2012) (citing *Steckman v. Hart Brewing, Inc.*, 143 F.3d 1293, 1298 (9th Cir. 1998) ("A claim in a proposed amended complaint is futile if it would be immediately subject to dismissal pursuant to Rule 12(b)(6) . . . for failure to state a claim . . . ."); *Nordyke v. King*, 644 F.3d 776, 790 n.12 (9th Cir. 2011). Futility alone is a reason to deny an amendment. *Novak v. United States*, 795 F.3d 1012, 1020 (9th Cir. 2015).

The court denied leave to amend as futile because the three-year statute of limitations on Plaintiffs' proposed medical malpractice claim had passed and they could not invoke the one-year discovery rule. (9/19/17 Order at 17.) Plaintiffs argue that the court erred in its denial. (Mot. at 4-5.) Plaintiffs' argument in favor of reconsideration is based solely on *Lo v. Honda Motor Company*, 869 P.2d 1114 (Wash. Ct. App. 1994), a case the parties and the court previously addressed. (*See* MTA at 10-11; MTA Resp. at 9; 9/19/17 Order at 15-17.) Although the court declines to reconsider its ruling denying leave to amend, it takes the opportunity to clarify the basis for that ruling.

Under Washington law, a party must bring a malpractice claim within three years of injury "or one year of the time the patient or his or her representative discovered or

reasonably should have discovered that the injury or condition was caused by said act or omission, whichever period expires later." RCW 4.16.350(3). The one-year alternative period is known as the discovery rule. *In re Estates of Hibbard*, 826 P.2d 690, 694 (Wash. 1992). Because Plaintiffs' proposed claim is untimely under the three-year statute of limitations, they invoked the discovery rule. (*See* MTA at 10 (" . . . Plaintiffs do not meet the three-year requirement," and "[a]s a result, Plaintiffs are relying upon the one-year time period, also known as the 'discovery rule' to assert their claims against Dr. Wu.").)

"Under the discovery rule, a cause of action accrues when the plaintiff knew or should have known the essential elements of the cause of action: duty, breach, causation[,] and damages." *Allen v. State*, 826 P.2d 200, 203 (Wash. 1992). The key consideration is "when the plaintiff knows or should know the relevant facts, whether or not the plaintiff also knows that these facts are enough to establish a legal cause of action." *Id.*; *see also Adcox v. Children's Orthopedic Hosp. & Med. Ctr.*, 864 P.2d 921, 933 (Wash. 1993). "To invoke the discovery rule, the plaintiff must show that he or she could not have discovered the relevant facts earlier." *Giraud v. Quincy Farm & Chem.*, 6 P.3d 104, 109 (Wash. Ct. App. 2000). To discover the relevant facts, "[t]he plaintiff need only discover some information about each of the four elements of a possible cause of action," although a "mere inquiry" is insufficient. *Olson v. Siverling*, 758 P.2d 991, 995 (Wash. Ct. App. 1988). If the plaintiff has that information, "the statute will run even if she is advised by a physician or an attorney that she has no cause of action." *Id.*; *cf. Gevaart v. Metco Constr., Inc.*, 760 P.2d 348, 350 (Wash. 1988) (holding that "the

discovery rule does not require knowledge of the existence of a legal cause of action" because that would "effectively do away with the limitation of actions until an injured person saw his/her attorneys"). Thus, a plaintiff "who reasonably suspects that a specific wrongful act has occurred is on notice that legal action must be taken." *Giraud*, 6 P.3d at 109.

Based on this authority, the court correctly concluded that the only new fact in this case—Dr. Christensen's expert report—provided no basis for invoking the discovery rule. (*See* 9/19/17 Order at 16-17.) Plaintiffs had the same information upon which Dr. Christensen based his opinions and indeed relied on that information to investigate malpractice. (*Id.* at 16 (citing 2d Bigby Decl. ¶¶ 2-3).) Thus, Plaintiffs had—or at the least, should have had—all of the relevant facts underlying the cause of action before the three-year limitations period expired. *See Allen*, 826 P.2d at 203. The fact that Plaintiffs may not have discovered a legal cause of action until Dr. Christensen's report does not change the analysis.[4] *Id.* Moreover, even if discovery of a legal cause of action were sufficient, Plaintiffs knew of Defendants' intention to assert the medical malpractice defense as early as May 2015. (*See* RTI Answer at 6; *see also* 1st Bigby Decl. ¶ 4 (stating that during discovery "Wright answered that Dr. Wu may be an at-fault non-party")); *Giraud*, 6 P.3d at 109.

The court finds the Washington Court of Appeals's decision in *McFadden v. South Sound Inpatient Physicians, PLLC*, 191 Wash. App. 1008, 2015 WL 6873463 (Wash. Ct.

---

[4] Nor does the fact that Plaintiffs' expert, Dr. Nakra, opined that Dr. Wu had not committed medical malpractice change the court's analysis. *See Olson*, 758 P.2d at 995.

App. Nov. 9, 2015), persuasive. There, the plaintiff argued that she could invoke the discovery rule to state a claim of medical malpractice after the limitations period because she brought the claim within one year of discovering the "salient facts"—an expert opinion that her husband's physician was negligent. *Id.* at *3. The court held, however, that it was contrary to Washington law that a "cause of action" did not begin accruing "until a medical expert specifically opined about each element" of the claim. *Id.* In reaching its conclusion, the court noted that the expert "relied on the same medical records" that the plaintiff previously had access to, undermining the plaintiff's argument that she could not have earlier discovered the acts comprising medical malpractice. *Id.* at *4. This case fits with the weight of authority in Washington that focuses on two overarching principles in determining whether a party may invoke the discovery rule: (1) when the party discovers the factual—rather than the legal—basis for the claim, and (2) that the limitations period begins to accrue even if a physician or attorney affirmatively states that there is no claim. *Allen*, 826 P.2d at 203; *Adcox*, 864 P.2d at 933; *Olson*, 758 P.2d at 995; *Gevaart*, 760 P.2d at 350. More importantly, this case undermines Plaintiffs' contention that they did not have a medical malpractice cause of action until Dr. Christensen provided his opinion.

In addition, as the court discussed in its September 19, 2017, order, *Lo* is distinguishable. In that case, the plaintiff attributed her car accident and resultant injuries to her prematurely born son's birth defects: The plaintiff "became convinced in her own mind that [her son's] afflictions were related to his premature birth, which she in turn believed to have been caused by the thrashing about she received in her Honda

automobile . . . ." *Lo*, 869 P.2d at 1115. Although her attorney consulted several physicians and one eventually opined that medical negligence caused her son's injuries, there is no indication that she earlier suspected medical malpractice. *See id.* at 1116 (quoting the plaintiff's attorney's letter in which he asked physicians "whether or not [the son's prematurity] could have related to the trauma suffered by his mother in the car accident" (emphasis omitted)). Here, Plaintiffs suspected, investigated, and dismissed medical malpractice as a potential cause of action. (MTA at 5; 1st Bigby Decl. ¶ 3 ("Plaintiffs did not otherwise have any reason to blame Dr. Wu and desired to proceed with a product liability claim against the named Defendants."); 2d Bigby Decl. ¶¶ 2-7.) Their decision not to pursue the claim does not toll the statute of limitations, and leave to amend to add the claim would be futile. *See Olson*, 758 P.2d at 995; *cf. Gevaart*, 760 P.2d at 350.

Finally, the court addresses Plaintiffs' contention that the court's ruling "force[s] [them] to spend significant costs on experts in chasing an opinion in the affirmative when another logical explanation exists for the adverse medical outcome." (Mot. at 5.) Although "[e]xpert testimony is generally required to prove proximate cause in medical malpractice cases," *McFadden*, 2015 WL 6873463, at *3, that element of proof need not be supported before the statute of limitations runs, *see Olson*, 758 P.2d at 995. To hold otherwise would be to "effectively do away with the limitation of actions until an injured person" finds an expert who will affirmatively state that medical malpractice occurred. *Gevaart*, 760 P.2d at 350. Washington law does not support such an outcome.

//

## IV. CONCLUSION

Based on the foregoing analysis, the court DENIES Plaintiffs' motion for reconsideration (Dkt. # 44).

Dated this 30th day of October, 2017.

JAMES L. ROBART
United States District Judge